Welcome to the Fourth Circuit, and we're prepared to hear argument in our first case, 19-1220 Bing v. Brivo Systems. Ms. Robinson, we'll be glad to hear from you. Good morning, Your Honors, and may it please the Court, Dena Robinson for Appellant Robel Bing. This case is properly before this Court because the District Court's order closed the case and there were no additional amendments that Mr. Bing could make to his complaint. What does that mean in Maryland, close the case? The District Court's order stated that the case was closed and that it was dismissed, and there was a mismatch between the Court's order and the Court's opinion. I know, but what's the legal effect in Maryland of a District Judge closing a case? I believe the legal effect in Maryland, Your Honor, is that when the case is closed, if the District Court Judge has not indicated that the case can be reopened, the case is closed. So can you amend a complaint after a case is closed under the same case number? If the case, generally speaking, if the case is dismissed without prejudice, you should be able to amend your complaint. However, here in Appellant… Even though the case is closed? There have been some cases in the District Court of Maryland where the Court has indicated to a plaintiff  Does it require the Court to advise the party they can amend or they can reopen the case after they've closed it? Can you restate the question? I'm sorry. Does it require the ability to amend a complaint after a case has been closed, or are you saying it requires the judge to tell the party when they close it, but you can amend later on if you want to? No, Your Honor. However, in Goode v. CVLAS, the District… No, no, no. I'm not talking about Goode. I'm talking about what the practice is in Maryland when a judge closes a case. Is the party free to amend under the same case number after the judges close the case? I believe so, yes. Okay. However… So do you have to file a motion to reopen the case? There have been some cases where the District Court has said if you want to reopen the case, you have leave to do so. Generally speaking, I believe that a plaintiff has a right to amend their complaint at least once. Right, but what's the practice in the District of Maryland? Is the normal mode of proceeding simply to file a motion to reopen the case under that preexisting case number? I don't know… If you don't know, I mean, it's okay to say you don't know.  It sounds like it's an inconsistent application of what… that there's no consistent rule of what closing a case means as far as the ability to amend later. I would agree with that, Your Honor. Here, there was a mismatch between the court's opinion and its order, and the nature of the court's opinion foreclosed any opportunity for Mr. Bing to amend his complaint. Which controls when they're inconsistent? I would say when they're inconsistent, Your Honor, the order here in this specific case should control. Which said what? Which said that the case was closed and that the case was dismissed. Whereas the opinion said that the case was dismissed without prejudice, and generally speaking, a plaintiff should be able to amend a complaint that was dismissed without prejudice, but Mr. Bing did not have that opportunity to do so here. Wouldn't the difference… I mean, the memorandum opinion said the complaint was dismissed, but the order said that the action was dismissed. Is that correct? Yes, Your Honor. They both said they were without prejudice, though, I think. The order specifically said dismissed. It didn't say dismissed without prejudice. The opinion, however, said dismissed without prejudice. And there was a mismatch between the two because Mr. Bing is a pro se plaintiff, and it's likely that he read the common understanding of the word closed and believed that the action was final and appealable. Do you believe, is it your client's position, that there's nothing more he could do in the way of amending his pleadings in order to more sufficiently plead them? Yes, Your Honor. And I'll briefly go through what he pled. Mr. Bing pled that he applied for the job… Before you do that, are you representing to the court today that the plaintiff is standing on his complaint as is? Yes. As is, we're representing that Mr. Bing's complaint is plausible. Well, I mean, that's a critical distinction under our cases, particularly under Chau. If the plaintiff represents to the court that they're standing on their complaint, that does affect the finality. So are you saying, yes, I am standing on my complaint, period? What we're saying here today, Your Honor, is that we believe Mr. Bing's complaint… That's sort of a yes or no answer to that question. Either you're standing on it or you're not. And that seems to be a critical distinction in the cases for jurisdictional purposes. I would say then, yes, Your Honor, that we're standing on the complaint because it's plausible as is. Because it's what? Plausible as is. And there's nothing additional that Mr. Bing could have added to make his complaint more plausible. If your footnote in the supplemental brief, footnote one says, nor does he concede that he could not cure his complaint by amendment, and that's somewhat what prompted my question. I wasn't sure what you meant there and if that's inconsistent with what you just told the court. Your Honor, it is our position that Mr. Bing's complaint is plausible as is. And if we were to go back to the district court and have the opportunity to amend our complaint, there is nothing that Mr. Bing would plead with a good faith basis that can make the complaint more plausible. Okay. Mr. Bing pled that he applied for the job with Brevo and did not disclose his race. That's at JA-16. He pled that he was interviewed in person by Ms. Scott and Mr. Reyes, not Mr. Wheeler. He pled that Ms. Scott was so eager for him to begin that Brevo asked if he could start his position early, and he put in his two weeks' notice at his former employer. He was offered employment contingent on successfully passing a background check by Justifax, which he passed. And on his first day of work, when Mr. Wheeler walked into the room and saw Mr. Bing sitting there, he went and conducted a Google search of Mr. Bing, thereby creating a special background check process just for him. I didn't pick that up from the complaint that he did his search after seeing the litigant sitting in the orientation session. That's at JA-16, Your Honor, that Mr. Wheeler came into the room, saw Mr. Bing, and conducted the background check and then confronted him. And then did the Google search? Yes. Okay. Thank you. The only additional facts that Mr. Bing could add to make his claim more plausible than it already is under Goode is within the control of the defendant, and we would need discovery to elicit those facts. One final point I'd like to add is that the district court did not grant Mr. Bing leave to amend his complaint, and while generally speaking the district court does not have to do that, the district court in Goode v. CVLAS provided the plaintiff with a roadmap and provided the plaintiff with additional allegations that they may have added to their complaint. Neither the district court, nor Brevo, has stated any additional allegations that Mr. Bing could make in good faith here. So, assuming we have jurisdiction, and your client at the time of the pleadings was acting pro se, and we have certain rules that we apply to pro se plaintiffs, but is there a certain way, there's a difference in construing a complaint liberally and relaxing the requirements that a sufficient cause of action be pledged. Is the fact that he's pro se important to your argument? In other words, are you saying we should construe what he said a certain way because he made a pro se pleading, or are you saying that whether he was pro se or not, this complaint plausibly states a cause of action? The latter, Your Honor. Regardless of whether Mr. Bing was pro se at the time that he filed his complaint, the complaint as is on these specific facts is plausible. Under Good v. CVLAS. If I may briefly turn to the merits of the argument. As to disparate treatment... Are you familiar with the case, fairly recent, 2015 from this court, McCleary-Evans v. Maryland Department of Transportation? Yes, Your Honor. That case seems somewhat like, assuming we have jurisdiction, somewhat like yours, even though it would appear Ms. McCleary pled a bit more than your client has here. How would you distinguish those two cases? I would say that here, Your Honor, given what this court stated in Good, that the question of jurisdiction is a fact-specific inquiry on these very specific... Let's assume we have jurisdiction. I'm on merits now. Well, here, Your Honor, Mr. Bing sufficiently pled that Mr. Wheeler either terminated him because of explicit racial animus or implicit bias. Again, he pled that he disclosed his race on his application, that Ms. Scott and Brevo were eager for him to begin working there, and that he gave his other employer two weeks' notice to begin working at Brevo. And he stated at JA-34, I can find nothing other than my possibly unexpected physical appearance as an African-American male to explain actions of race and sex discrimination initiated by Mr. Wheeler, whose actions clearly fell outside of the established Brevo hiring processes. So I would argue that here, Mr. Bing did sufficiently state a claim of disparate treatment based on his race as a black man. Well, he certainly stated his belief that that would be the case. But as McCleary and other cases have indicated, that seems to be more skewed to the side of a subjective, speculative commentary and not an objective statement of the elements. He doesn't have to make a prima facie case in order to present his complaint. But to make it plausible, it can't be speculative. And so that's why I asked you about the McCleary case, because it seems to be fairly similar to what has been pled here, even though it looks like perhaps Ms. McCleary pled a bit more than your client did. And I would say again, Your Honor, that on these very specific and unique facts, we understand that this case is extremely unique. Mr. Bing sufficiently pled a race discrimination case, and this court should construe all of the reasonable inferences that can be made in his favor in liberally construing his complaint. And that is what the district court should- Did he plead that he was replaced by someone who was not in the protected class? Your Honor, he did not. And he was only required to meet basic plausibility, not additional plausibility or more plausibility. And so on these specific facts, it's our position that he did meet basic plausibility in what he pled. And because this is a very unusual case, and it's a case that implicates implicit bias, we understand that in these cases, as Judge Davis discussed in Woods, there is the possibility for cases that implicate implicit bias to lose at the motion-to-dismiss stage because of the lack of evidence and of objective evidence. But there's an issue in these cases where a judge will substitute their viewpoint of the stated reasons for termination instead of using the controlling plausibility standard, and it's our position that that's what happened in this case. So is it- I want to make sure I understand. Your argument is this is an unusual case because of the possibility of implicit bias? Is that what- I'm trying to understand what makes this unusual for other- from other Title VII race discrimination cases. Our argument is that, Your Honor, on these specific facts, the context and the timing in which Mr. Bing's termination arose, the complaint is plausible. This is different from a case like Goode v. CVLAS where the plaintiff there worked for the employer for 25 years. Mr. Bing was employed by Brevo for mere hours. So there is certainly information that he could have added to the complaint if he had more time working there as an employee, but he did not. And any additional information that he could add would need to come out during discovery. And right now that information is in the control of Brevo and Brevo only. With my remaining time, I'd like to finish addressing disparate treatment. Mr. Bing also pled implicit bias based on animosity towards African Americans. And as I stated previously in Woods, this court acknowledged that a lot of racial discrimination cases now are perpetuated via implicit bias, which is what happened in this case, and Mr. Bing sufficiently pled that as well. So what's your definition of implicit bias? Implicit bias was defined in Woods as unchecked racial stereotypes and attitudes, and it's implicit because it's unconscious. So we might not know that we have these unchecked racial biases, but they might come out in everyday interactions, everyday conversations, the stereotypes that we form about other people. And Mr. Bing pled that unchecked implicit racial biases may have led Mr. Wheeler to conduct the Google search. I just want to note for your honors that the issue in this case really is what led to Mr. Wheeler conducting the Google search, and that's why we'd like this court to apply the promise of Woods that when a judge substitutes their viewpoint for why someone was terminated, this court will force the district court judge to instead apply the controlling plausibility standard. In conclusion, Mr. Bing respectfully requests that this court reverse the dismissal and remand the case for further proceedings. Thank you. Thank you. We have some time left in rebuttal. Mr. Shank. Thank you, Your Honor. May it please the court, it's my privilege to be here on behalf of the Appellee, Frivo Systems. Frivo respectfully requests this court dismiss the appeal for lack of appellate jurisdiction and not remand for any further proceedings. Your Honors, before I get into the principle of my argument, I would like to first respond to some of what counsel for Mr. Bing said. Let me just make sure I understand. Your request is that we don't have jurisdiction because it's not a final order, but you're saying also that it can't be remanded? It is our request that this case, consistent with some prior decisions, not be remanded for further proceedings. So you're basically saying that would leave this plaintiff without any remedy to review the district court's order? Is that the effect of what you're arguing? Yes, sir, it is. Well, wouldn't that be for the district court to determine? I mean, if we don't have jurisdiction over this, aren't we done? Well, I would say that this court is done and the proceeding is done. And I'm happy to address this issue now since the court's brought it to attention. But we received the good decision in 2015 following a number of unpublished decisions in which this court dismissed those cases, in some instances remanding and in other instances not. Booker being one, I believe, for example. The court then, I believe, felt incumbent to publish a decision to enshrine the salutary rule. Once and for all, appellate decisions, appellate cases from non-final orders that come to this court are not right for appeal. Well, I ask your opposing counsel several questions related to Chow v. Rivendell Woods. And she's represented to the court that the plaintiff is standing on his complaint. So why isn't that sufficient under Chow to give us jurisdiction? Your Honor, I believe two things, and I make this statement not lightly. The representation that Mr. Bing is prepared to stand on his complaint, as is, without amendment, seems inconsistent with the arguments in brief. The court pointed out footnote one in supplemental briefing. Mr. Bing has made arguments that irrespective of what this court does, whether it even affirmed the dismissal, that he is prepared to reserve his rights under Rule 15, to move to reopen the case, to assert new claims, a Section 1981 claim that was not specifically stated, to allege new theories of liability, including disparate impact. Well, if we have jurisdiction and then we go on and determine the merits of the appeal, I mean, would any of that really be relevant? Well, I only say that to say the distinction in Chow is important because, number one, Mr. Bing has signaled prior to today that he does not intend to stand on his complaint as drafted. But in Chow, standing on the complaint was very clear at the district court level. We know that that was the Secretary of Labor who affirmatively stated at the district court level that she refused to amend, and the reason for that was institutional purposes. Understood. There was a reason that, in that case, the Secretary of Labor said that she was standing on the complaint. But whether it's because of the need for consistency, or because there's just not facts that the plaintiff can do any better with, and says we're going to stand on it, doesn't that deserve some opportunity to be reviewed? Your Honor, I respectfully say no, and I believe that... So if the district court puts without prejudice in there, that deprives a plaintiff from having a review of the dismissal of their case? Unless the facts, unless the basis for that dismissal show that it cannot be cured through amendment. That's the Domino Sugar Rule that says two classes of cases... Well, Domino Sugar, as I read it, talks about the dismissal of a complaint. And then it says it adopts the rule that some courts have that the dismissal of a complaint, as opposed to an action, must be reviewed under the circumstances to determine whether the grounds are such that you cannot amend. Here we have, admittedly, a little bit of difference between the opinion and the order. But the order is a dismissal of the entire action. So I'm not sure Domino Sugar doesn't, if we apply the Domino Sugar holding, that wouldn't make this final in and of itself. Two points to that. In Domino Sugar, the court concluded that it was a pure legal procedural defect that could never be cured. With respect to the dismissal of the action, the good case addresses that squarely on point. It essentially says, because in that case it was a dismissal of the action, the court says we're not going to hold district court judges to the technical oversight of syntax between dismissal of complaint and dismissal of action. The bottom line was when the complaint was dismissed without prejudice, and even in good, the court used the language, the action is dismissed in its memorandum opinion, good court still said that that's a distinction without a difference for the purposes of our salutary rule. So there's a couple of points there I'd ask you to respond to. One is that, I mean, can good overrule, in effect, Domino Sugar? I mean, if you're saying good changed a rule that before that said that actions, dismissal of actions without prejudice were immediately appealable, can good change that? Can one panel change another? That's number one. And number two, even if it did expand the Domino Sugar holding, isn't one of the critical things about good that there was no other indications of finality? And here we got the dismissal of the case and an instruction that the case be closed. Doesn't that indicate finality? I would say in good, the district court's order said dismissal of the action. And the court addressed that issue and said, we find that to be a distinction without a difference. What about the instruction to close the case? Does that not signify any finality? We have a case, MAP, Penn National v. MAP, I believe this court's familiar with. That one expressly said it was an administrative decision and expressly said you can bring this issue up later. I read the portion of MAP that I relied on was the one which said administrative closure of the case by subsequent order following memorandum decision does not equal finality. You might. I was focused at 521F3D at 295. I understand that. Anyway, I don't want to argue with you, but I think if you look at that case and it's in total, the order said it's dismissed from the court's active docket and said may be reinstated upon proper motion. So it indicated because there was an issue of indemnity that was still clearly pending. Anyway, so I appreciate the holding, but I think, yeah, the facts may make that different. Maybe not. Fair point, Your Honor. Yes, sir. Can you tell me what closing a case in Maryland means? What's the legal effect when the district judge says I close or directs the clerk to close the case? What's the legal effect of that? Your Honor, I can't speak with authority as to the legal effect. What I can speak to generally in practice with regard to administrative orders that are entered following a detailed memorandum opinion that dismisses an action without prejudices, you're going to see a wide variety of language there. I think that to argue that there is inconsistency between the order and the memorandum opinion, that, in my humble opinion, is a stretch. I think one was silent on a particular issue, and I think that requiring that level of, again, syntax or consistency for our district court judges who are managing those dockets and those magistrates or others who are entering those administrative orders is a significant burden to heap upon them when, in this case, you have a nine-page memorandum order from a judge who considered more than or approximately 100 pages of material that was submitted by Mr. Bring and in detail analyzed those allegations and specifically found allegations that were deficient and allegations that were contrary to his pleading elements. Before you get too far away from that issue, if they have different legal effects, if a dismissal has a different legal effect from a dismissal without prejudice, which controls? I would have to say, Your Honor, the memorandum order written by the district court judge should control versus an administrative order. There are a number of cases that have given the plaintiff leave to reopen the case. The question is this. At the time Mr. Bing filed his appeal, he was not pro se. He was represented by a competent counsel. He had a sympathetic district court judge who, at numerous times, said, Mr. Bing. Are you suggesting there might be some unsympathetic district judge? You don't have to answer that. I don't want you to get in trouble. No, I come from a nutty ostrich. I'll leave it at that. But the invitation that Goode clearly said, a dismissal without prejudice invites amendment. Judge Ennis was at multiple times referencing the sympathy and her understanding with his plight, having being represented by counsel at that phase. I believe the burden is not on the district court judge, but it's on the litigant to seek clarification through a variety of means. Those means exist for attorneys and litigants to get clarification before electing a remedy that may have very serious consequences. And that's exactly what happened here. Not to re-plow the ground, but so much. Tell us one more time why, based on counsel's representation today, this case is different from Chau. This case is different from Chau because at the district court level, the Secretary of Labor says, I shall not amend. She affirmatively made the representation. Right, but the opposing counsel has made that representation to us. She's an open court. She's an officer of the court. She's subject to sanctions. That's not a true and correct statement. I'm not sure that there's a distinction we can make there. If Mr. Bing is prepared to live with the pro se complaint he drafted and never move below for any amendment to add to claims or the theories of liability that he has forecasted he would in his briefing, then I believe he is standing on his complaint in accordance with Chau. But I would say I would agree with that position, Your Honor. But that would necessarily require him to do what he has said and to make no further amendment, to move to do nothing more with that complaint but to proceed with discovery and further proceedings. Well, if we were to determine it's a final order and therefore we have jurisdiction, at that point we look at it on the merits, right? And we could get to that in just a minute. But we'll either agree with the district court on the merits or not. Hypothetically, if we agree with the district court on the merits, the case is over. There's not an opportunity to amend. May you agree with that? I certainly do, Your Honor. Okay. And I take your point. I have not much more to say with respect to the merits other than what this court already knows with McCleary and others. I mean, I would stand on those cases as the benchmark that would justify the dismissal of Mr. Bing's claims. Well, let me ask you a question about the merits before you leave that. As I understood the representation made by your opponent, the complaint alleges that Wheeler did not do the Google search until after he knew the race. And going back over the complaint, I can't find where that's alleged. I'm sorry to interrupt. I can turn you to it. And I disagree with that. I think the timing is confused at best. But I can point you to the joint appendix at page 14, JA14. That's what I've been looking at. Yes. So what we see here, Your Honor, I was met. I'm reading a second line of the second paragraph. Quote, I was met by two Brevo employees who had not participated in my application process, Mr. Charles Wheeler and Mr. Richard Crowder. Mr. Wheeler was introduced as a security architect for Brevo and Mr. Crowder as the director of technical services. Both Brevo employees were Caucasian males. Within an hour of orientation, I was pulled aside by Mr. Wheeler and confronted about a Baltimore Sun newspaper article pursuant to a Google search which sensationally reported I was the subject of a criminal investigation involving a shooting. Now, one could read into that that Mr. Wheeler saw him and then did the Google search. But one could equally read into it as part of Brevo's normal process. Mr. Wheeler did that Google search of all employees when he came into the office and then later conferred with others and then approached Mr. Bing. I don't think that that is a clear statement that Mr. Wheeler saw him and ran to his office and conducted the Google search, Your Honor. It's ambiguous at best. Thank you. That answers my question. Let's assume for the sake of discussion here that the Google search did occur afterwards. Would that adequately state a plausible claim in your view? No, Your Honor, it wouldn't because once again, standing on his complaint, if he is to do that, he's played himself back out of it because in his complaint, as the district court judge noted, allow me one moment to find the citation. Are you going to the district court's opinion or are you in the complaint? I'm in the district court's opinion, and she cites to the portion of the complaint. So give us a page when you get to it.  This is from her opinion where she quotes, references the complaint at J176 in her memorandum opinion as a basis. First or second paragraph. Your Honor, I'm reading off my outline. I apologize. Can I read the court the language and then find the citation? Sure. As a ground for the factual insufficiency, the district court judge found, quote, being also, quote, averse facts establishing that he was terminated because of his involvement in a shooting incident, the veracity of which being confirmed. So even if the Google search was performed, the termination, as alleged, ultimately flowed directly from Mr. Bing's admission that he was involved in this incident. Brevo Systems being a security-centric firm focused on physical security and virtual security, the security architect found that incident to be disqualifying. So under these, if we were to infer that the Google search took place after he saw and encountered Mr. Bing for the first time, and if that's the case, the issue I think he would say is maybe the ultimate termination was because of the news accounts of the shooting incident, but the thing that caused the additional research or investigation was race-based. If that's true, if the additional investigation was race-based and then the ultimate termination was race-neutral, what do we do in that circumstance? Well, again, to answer your question, if Mr. Bing is standing on his pleading, Mr. Bing has alleged that he doesn't know whether the Google search is part of a to him. He has not alleged that he was singled out because of his race. He says he doesn't know. With my time winding else, Mr. Shank? Only to conclude to say, based on the unripe appeals that have come to this court following good, appeals that have been dismissed, including one without remand, I believe to protect that salutary rule enshrined in good, some consequence must inure for those who have not yet learned the rule, even if that result is harsh. A rule that is ignored or disregarded begets more disregard, and for the court to have taken the time and thought that it did include only to see more of these appeals, I believe respectfully has the danger of eroding that rule to the point that it is a dog with a bark but not much bite. I respectfully ask this court to dismiss the appeal for lack of appellate Thank you very much. Ms. Robinson, you've got some time in rebuttal. Your Honors, I briefly want to respond to a couple of questions and points that opposing counsel raised. Judge Traxler, you have to reopen the case, and it's not purely administrative, so a motion may be denied to answer your question about what happens in Maryland when the district court closes the case. And what is that answer again? That you have to reopen the case, and it's not purely administrative, but the motion may be denied by the court. So is that a local rule there, or that's just your view of practice? That I am not sure of. Okay. Judge Traxler, to answer your other question about the record and Mr. Wheeler terminating Mr. Bing after seeing him at orientation, if you take the reasonable inference from Mr. Bing's liberally construed pro se complaint, the inference there is that Mr. Wheeler, upon seeing Mr. Bing, regardless of whether he saw Mr. Bing during the orientation or within an hour, went and conducted a Google search of him because he was black. And that's what Mr. Bing pled in his complaint, and he plausibly alleged that the search was motivated by the discovery of his race. That is what Mr. Bing pled time and time again in his complaint. Last, opposing counsel said that Mr. Bing confirmed the termination was because of his involvement in a shooting. The opinion excerpt that he read stated exactly what Judge Davis warned of against in Woods, where the district court judge substituted her likely reason for Mr. Bing's termination for the controlling plausibility standard. What she erroneously did was she credited Briveau's self-serving narrative as true, and she looked at the email that Mr. Bing sent to the Briveau CEO, Mr. Van Til, and Mr. Bing sent that email to Mr. Van Til not for its truth, but to relay the interaction that he had with Mr. Wheeler, which involved Mr. Wheeler telling him that he went to the security director and Ms. Scott, and they determined that he was unfit for the position. But the district court stated that because of that email, Mr. Bing affirmed that he was terminated because of his involvement in the substance of the Baltimore Sun article, and that is incorrect. In your reply brief, statements made in the footnote, the district court prevented Mr. Bing from amending his complaint. How did the district court do that? Mr. Bing was prevented from amending his complaint because there were no additional allegations that he could have added to the complaint. I believe I stated in my main argument that the court did not inform Mr. Bing that he had leave to amend the complaint, and it had a mismatch between its opinion and its order. I actually didn't tell him anything. Right. It was completely silent. How does that get interpreted as a denial? It's a denial in that it did not suggest any additions that Mr. Bing made to his complaint to pass the motion to dismiss state. Yeah, but why would the district court do that? I mean, district court judge is not his lawyer. This is true, Your Honor. The district court did not have to state that Mr. Bing had leave to amend his complaint. But looking at good versus CVLAS, that requires more than silence. And the district court was completely silent. It did not state in any way that there were additional amendments. That's an accurate statement. But I think, as Judge Strachler indicated, it can't represent to the court that the district court somehow prohibited or hindered him from filing an amendment to the complaint. They just didn't do anything. Right. That's correct, Your Honor. And earlier you said there's nothing he would amend to add, correct? Right, Your Honor. There's nothing in good faith that Mr. Bing could add to his complaint at this time, and it remains our position that his complaint as is is plausible and that he pleaded sufficient factual allegations about race discrimination either grounded in explicit racial animus or implicit bias. If there are no further questions, Your Honor, we respectfully request that you reverse the court's dismissal and remand the case for further proceedings. Thank you. Thank you very much. We appreciate the arguments of both counsel. Ms. Robinson, we know you are a pro bono, and the court appreciates those members of the bar who act in that capacity. Thank you. We'll come down and break counsel and move on to our next case.
judges: G. Steven Agee, A. Marvin Quattlebaum Jr., William B. Traxler Jr.